# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS



FILED
JUL 15 2024
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

UNITED STATES OF AMERICA,

*ex rel.* VERITY INVESTIGATIONS, LLC,

*Plaintiff/Relator*,

v.

IMPERATIVE CHEMICAL PARTNERS, INC.,

*Defendant.*

Case No. 7:24-cv-160

**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729** *et seq.*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**Jury Trial Demanded**

1

## *QUI TAM* COMPLAINT

**I. INTRODUCTION**

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover $2 million (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it had fewer than 300 employees. That loan was later forgiven, and the federal government paid the bill.

2. The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.
[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

2

5. Defendant falsely certified to the SBA that it had 300 employees. As a direct result of that false statement, Defendant obtained a Second Draw PPP loan of $2,000,000.00, which was later forgiven.

6. Relator is an outside investigative company that detected Defendant's fraud by reviewing the Form 5500 that Defendant's employees' 401(k) plan filed with the Department of Labor. Those forms indicated that the 401(k) plan had more than 300 "active participants" in each of 2019 and 2020. Because an "active participant" is an employee, these forms' representations to the Department of Labor give the lie to Defendant's false statement to the SBA that it employed fewer than 300 persons.

## II. THE PARTIES

7. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8. Defendant Imperative Chemical Partners, Inc. ("Imperative") is a Delaware corporation with its principal place of business in Midland, Texas.

## III. JURISDICTION AND VENUE

9. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

10. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

11. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

12. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

13. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

14. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

15. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

16. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

17. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

18. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

19. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

20.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

21.     The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

22.     The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

23.     As of February 12, 2024, courts must assess a civil penalty of no less than $13,946 and no more than $27,894 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

24.     False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

V.     NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

25.     On information and belief, no "public disclosure" has been made of Defendant's false statement and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

26. On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

27. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

28. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has "connected the dots" between (a) Defendant's Form 5500 disclosures and other statements, and (b) Defendant's false certification for the Second Draw PPP loan.

29. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. THE SECOND DRAW PPP LOAN PROGRAM

30. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

31.     The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

32.     The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

33.     The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

34.     The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[8]

35.     That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[9]

36.     That regulation defined "affiliate" broadly. The term includes "affiliation based on ownership": "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the

---

[4] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).
[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.
[9] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

7

Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[10]

Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[11]

Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[12]

Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[13]

---

[10] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[11] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[12] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).
[13] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[14]

37. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

38. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

39. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

40. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

41. The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

---

[14] 13 C.F.R. § 121.301(f) (as of Dec. 14, 2020).

## VII. DEFENDANT FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A. BACKGROUND

42. Upon information and belief, Defendant Imperative Chemical Partners, Inc. ("Imperative") is a corporation registered in Delaware[15] and headquartered at 203 W. Wall Street, Midland, Texas 79701.[16]

43. Imperative can be validly served with process at 1209 Orange St., Wilmington, DE 19801.[17]

44. Imperative provides chemical services including production chemical, midstream chemicals, completion chemicals, capillary services, acid services, and hot oiling.[18]

### B. FALSE STATEMENT TO OBTAIN SECOND DRAW PPP LOAN

45. In 2020, Imperative submitted its Borrower Application form to apply for a First Draw PPP loan in the amount of $8,693,400.00.

46. On or about August 3, 2021, after Imperative applied and was approved for a Second Draw PPP loan, the U.S. government forgave 100% of Imperative's First Draw PPP Loan, including interest, in the amount of $8,806,172.72.

47. In 2021, Imperative submitted its Borrower Application form, SBA Form 2483-SD, to Transportation Alliance Bank, Inc. in Ogden, Utah to apply for a Second Draw PPP loan.

---

[15] Delaware, Division of Corporations, Imperative Chemical Partners, Inc., https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (for File No. 5481034).
[16] Delaware, Division of Corporations, Imperative Chemical Partners, Inc., https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (for File No. 5481034); Imperative, https://www.imperativechemicals.com/; LinkedIn, Imperative Chemical Partners, Inc., https://www.linkedin.com/company/imperativechemicals/.
[17] Delaware, Division of Corporations, Imperative Chemical Partners, Inc., https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx (for File No. 5481034).
[18] Imperative, https://www.imperativechemicals.com/service/ (stating its services).

48. On its Form 2483-SD, Imperative listed its address as 203 W. Wall St. N/A, Midland, Texas 79701-4530.

49. On its SBA Form 2483-SD, Imperative represented to the lender and to the U.S. government that it and its affiliates had 300 employees—exactly the 300-employee limit needed to be eligible to apply.

50. Imperative's SBA Form 2483-SD's representation regarding the total number of its and its affiliates' employees was false. Imperative and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

51. Imperative deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Imperative signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

52. On or about May 11, 2021, Imperative was approved for a Second Draw PPP loan in the amount of $2,000,000.00 by lender Transportation Alliance Bank, Inc.

53. The U.S. government paid lender Transportation Alliance Bank, Inc. a lender's processing fee of 1% of the $2,000,000.00 loan, in the amount of $20,000.00.[19]

54. On or about January 19, 2022, the U.S. government forgave 100% of Imperative's Second Draw PPP Loan, including interest, in the amount of $2,013,611.11.

C. **EVIDENCE OF MORE THAN 300 EMPLOYEES**

55. On its Borrower Application form to apply for a First Draw PPP loan, Imperative represented to the lender and to the U.S. government that it and its affiliates had 480 employees—

---

[19] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

11

narrowly under the 500-employee limit needed to be eligible to apply for a First Draw PPP loan but greater than the 300-employee limit needed to be eligible to apply for a Second Draw PPP loan.

56. Additionally, Imperative maintained a 401(k) retirement plan for its employees in each of 2019, 2020 and 2021 (the "Imperative Employee Benefits Plan").

57. The Imperative Employee Benefits Plan was a "single employer" plan, meaning that it provided pension benefits solely to the employees of one employer.[20] That employer was Imperative.[21]

58. In 2019, 2020, and 2021 the Imperative Employee Benefits Plan had the following legal name: Imperative Chemical Partners, Inc. 401K Plan.

59. Each year, the Imperative Employee Benefits Plan was required to file a Form 5500 with the U.S. Department of Labor. That form required the Imperative Employee Benefits Plan to state the "number of active participants" at the beginning and end of the plan year. Form 5500 instructed Imperative that "active participants" are "individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan."[22]

60. In 2019, the Imperative Employee Benefits Plan reported 379 active participants at the start and 384 active participants at the end of the year.[23]

61. In 2020, the Imperative Employee Benefits Plan reported 500 active participants at the start and 393 active participants at the end of the year.[24]

---

[20] The plan's Forms 5500 for 2019, 2020, and 2021 all check the box in section A attesting that it was "a single-employer plan."
[21] The plan's Forms 5500 for 2019, 2020, and 2021 all list the "employer" as "Imperative Chemical Partners, Inc." All three years' Forms 5500 also give the same Employer Identification Number. The address is listed as PO Box 60634, Midland, TX 79711.
[22] Instructions for Form 5500 (2021).
[23] Form 5500, Imperative Chemical Partners, Inc. (2019).
[24] Form 5500, Imperative Chemical Partners, Inc. (2020).

62.	In 2021, the Imperative Employee Benefits Plan reported 387 active participants at the start and 360 active participants at the end of the year.[25]

63.	Other databases also contradict the representation that Imperative made in its SBA Form 2483-SD that it and its affiliates only had 300 employees. For instance, as of March 5, 2024, D&B Hoovers reports that Imperative had 450 total employees.[26] As of March 13, 2024, LinkedIn categorized Imperative as having "501-1000 employees."[27] As of March 18, 2024, ZoomInfo reported Imperative as having "595 employees"[28] and Zippia reported Imperative as having 750 employees.[29]

64.	On information and belief, Imperative's payroll records from 2019, 2020, and 2021 will confirm what Imperative always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

65.	Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

66.	Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender a claim for approval of a Second Draw PPP loan.

---

[25] Form 5500, Imperative Chemical Partners, Inc. (2021).
[26] D&B Hoovers, Imperative Chemical Partners, Inc. (last visited March 5, 2024); *see also id.* (explaining that D&B Hoover's reported count of "actual employees" is "[t]he sum of individuals employed at a parent or headquarter location and all locations that roll up into it, or attributed to an organization which is a single location, as reported on an official financial statement or reported by a government institution").
[27] LinkedIn, Imperative Chemical Partners, Inc., https://www.linkedin.com/company/imperativechemicals/.
[28] ZoomInfo, Imperative, https://www.zoominfo.com/pic/imperative/470968338.
[29] Zippia, Imperative Chemical Partners, https://www.zippia.com/imperative-chemical-partners-careers-2128351/.

67. Defendant's knowingly false claim on its SBA Form 2483-SD was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

68. But for Defendant's knowingly false claim, the lender would not have issued the loan and the SBA would not have forgiven it.

69. The Second Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

70. The Second Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

71. The Government later reimbursed the lender 100% of the amount of Defendant's Second Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

72. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

73. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made a false record and statement—namely, its SBA Form 2483-SD and its included certifications—to support a false claim submitted to the lender for approval of Second Draw PPP loan.

74. Defendant's knowingly false record and statement was material to the lender's decision to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

75. But for Defendant's knowingly false record and statement, the lender would not have issued the loan and the SBA would not have forgiven it.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: July 9, 2024

Respectfully submitted,

_____
Steven M. Shepard
Stephen Shackelford (*to seek pro hac vice*)
Alicia Lai (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshepard@susmangodfrey.com
sshackelford@susmangodfrey.com
alai@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*