IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* VERITY INVESTIGATIONS, LLC,<br><br>      *Plaintiff/Relator*,<br><br>      v.<br><br>IMPERATIVE CHEMICAL PARTNERS, INC.<br><br>      *Defendant*. | Case No. 7:24-cv-160 |

**DEFENDANT IMPERATIVE CHEMICAL PARTNERS, INC.'S MOTION TO DISMISS RELATOR'S CAUSE OF ACTION FOR VIOLATION OF 31 U.S.C. § 3729(a)(1)(G) UNDER FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6) AND BRIEF IN SUPPORT THEREOF**

Defendant, Imperative Chemical Partners, Inc. ("**Imperative**"), files this Motion to Dismiss Relator's Cause of Action for Violation of 31 U.S.C. § 3729(a)(1)(G) under Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted. In support of said Motion, Imperative provides its Brief in Support, below.

## I. EXECUTIVE SUMMARY

1.1   On May 13, 2025, Relator, Verity Investigations, LLC ("**Relator**"), filed its First Amended Complaint for violations of the Federal False Claims Act ("**FCA**"). Relator asserts three causes of action against Imperative: (1) submitting false claims for payment under 31 U.S.C. § 3729(a)(1)(A); (2) creating a false record or statement material to a false claim under 31 U.S.C. § 3729(a)(1)(B); and (3) improperly avoiding an obligation to pay or transmit money under 31 U.S.C. § 3729(a)(1)(G).

1.2     This *qui tam* action arises from Imperative's alleged submission of a false claim to the United States Small Business Administration ("**SBA**"), and the SBA's subsequent payment of that claim. Relator alleges that Imperative applied for a Paycheck Protection Program ("**PPP**") loan, specifically, a second draw PPP loan ("**Second Draw**"), and falsely certified in its application that it had 300 employees—the maximum number of employees a borrower-applicant could have to be eligible for the Second Draw. Relator's causes of action, including the specific cause of action at issue in this Motion, are based solely upon this allegation. While Imperative denies Relator's allegations in their entirety, and further denies it engaged in any fraudulent conduct or otherwise violated the FCA, it only seeks dismissal, at this stage, of Relator's cause of action for violation of 31 U.S.C. § 3729(a)(1)(G).

1.3     Relator's cause of action for violation of 31 U.S.C. § 3729(a)(1)(G)—otherwise known as a "reverse" FCA claim—fails as a matter of law because it is an improper duplication of Relator's other FCA claims and is not permitted under federal law. Additionally, Relator fails to allege any actionable concealment, avoidance, or decrease of any purported obligation to pay the Government, as is required to state a claim under 31 U.S.C. § 3729(a)(1)(G). Accordingly, Relator's cause of action for violation of 31 U.S.C. § 3729(a)(1)(G) must be dismissed.

## II.   RELEVANT FACTUAL ALLEGATIONS

A.   **OVERVIEW OF THE PAYCHECK PROTECTION PROGRAM**

2.1     This action arises from and involves the PPP, a "small business" relief program created by the United States Congress at the onset of the COVID-19 pandemic through the Coronavirus Aid, Relief, and Economic Security Act ("**CARES Act**") of 2020. The CARES Act created the PPP, under which certain eligible small and nonprofit businesses could receive forgivable loans to help them cover certain business expenses, including payroll and rent costs.

2.2     The PPP offered two types of loans: First Draw loans and Second Draw loans. First Draw loans, which were capped at $10,000,000, were generally available for qualifying businesses with 500 or fewer employees. Second Draw loans, which were capped at $2,000,000, were available for businesses that had received a First Draw loan and met other eligibility criteria. Relator alleges that Second Draw loans were limited to businesses with no more than 300 employees, without exception, and further alleges this limit was communicated to borrower-applicants through a "Frequently Asked Questions" web page on the SBA's website, as well as through regulations set forth in the Code of Federal Regulations. *See* Doc. No. 18, ¶¶ 30-37.

2.3     To apply for a PPP loan, businesses had to complete an SBA Form 2482 (for First Draw loans) or an SBA Form 2483-SD (for Second Draw loans) and submit the application with supporting documentation to a participating lender, who, along with the SBA, would decide whether to make or deny the loan. Borrowers who had received a First or Second Draw loan were eligible for loan forgiveness provided they qualified under the SBA's loan forgiveness rules.

**B.     RELATOR'S ALLEGATIONS AGAINST IMPERATIVE**

2.4     Imperative is a chemical solutions provider that offers chemical management and infield technical support to oilfield operators and midstream companies. Relator alleges that, in 2021, Imperative applied for a Second Draw loan from the SBA for $2,000,000 and represented in SBA Form 2483-SD that it had 300 employees. *Id.*, ¶¶ 47, 49. Relator alleges this representation was false and that Imperative, either individually or in combination with other affiliated entities, employed well over 300 employees. *Id.*, ¶ 50.

2.5     Relator alleges that, on or about May 11, 2021, Imperative's Second Draw loan application was approved, and that Imperative received the amount requested: $2,000,000. *Id.*, ¶

52. Relator further alleges that, on or about January 19, 2022, the Government forgave one hundred percent (100%) of Imperative's Second Draw loan, including interest. *Id.*, ¶ 54.

### C.  RELATOR'S CLAIMS AGAINST IMPERATIVE

2.6   Relator asserts three causes of action against Imperative: (1) submitting false claims for payment under 31 U.S.C. § 3729(a)(1)(A); (2) creating a false record or statement material to a false claim under 31 U.S.C. § 3729(a)(1)(B); and (3) improperly avoiding an obligation to pay or transmit money under 31 U.S.C. § 3729(a)(1)(G). *Id.*, ¶¶ 65-81. Relator's allegations in support of these causes of action can be summarized as follows: Imperative falsely claimed it was eligible to receive a Second Draw loan, falsely represented to the SBA that it met the 300-employee limit for Second Draw loans, and knowingly avoided its obligation to reimburse the Government for the allegedly improperly received Second Draw loan proceeds. *See id.*

### III.  DISMISSAL STANDARDS

3.1   A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted tests the legal and factual sufficiency of a complaint. *Dumas v. Wal-Mart Stores E., LP*, 2009 WL 10700071, at *2 (W.D. Tex. Apr. 30, 2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts, accepted as true, "to state a claim to relief that is plausible on its face[,]" and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In deciding a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [plaintiff]." *In re Katrina Canal Breaches Litig.*, 493 F.3d 191, 205 (5th Cir. 2007). However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal. *Twombly*, 550 U.S. at 556-57.

3.2    Rule 9(b) imposes a heightened pleading standard on fraud claims, including claims under the FCA, and requires the plaintiff to "state with *particularity* the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b) (emphasis added); *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). To satisfy Rule 9(b)'s "particularity" requirement, a complaint must set forth, at a minimum, the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). A dismissal for failure to plead with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6). *Id.* at 901.

## IV.    ARGUMENTS AND AUTHORITIES

A.    OVERVIEW OF "REVERSE" FALSE CLAIMS UNDER THE FCA

4.1    The FCA prohibits the submission of false claims that induce the Government into making an improper payment. *See* 31 U.S.C. § 3729(a)(1). However, the FCA also creates a cause of action for "reverse" false claims. *Id.*, § 3729(a)(1)(G). Under the reverse false claim provision of the FCA, "a plaintiff may recover against any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money to the Government." *U.S. ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 652-53 (5th Cir. 2004) (internal citation and quotation marks omitted). "In a reverse false claims suit, the defendant's action does not result in an improper payment by the [G]overnment to the defendant, but instead results in no payment to the [G]overnment when a payment is obligated." *Id.* at 653.

4.2    Importantly, while the "direct" false claims provisions of the FCA punish a person's fraudulent receipt of money from the Government, the reverse false claims provision of the FCA punishes a person's *failure to pay* money that is *owed to* the Government. *See U.S. ex rel. Marcy v. Rowan Cos., Inc.*, 520 F.3d 384, 390 (5th Cir. 2008); *see also U.S. ex rel. Ligai v. ETS-Lindgren*

*Inc.*, 2014 WL 4649885, at *13 (S.D. Tex. Sep. 16, 2014) (discussing the purpose of reverse false claims causes of action under the FCA). Because the direct and reverse false claims provisions of the FCA are intended to address different types of conduct, federal courts have routinely dismissed reverse FCA claims that are based upon the same set of facts as the direct FCA claims. *See, e.g.*, *Ligai*, 2014 WL 4649885, at *13 (dismissing relator's reverse FCA claims as redundant of its direct FCA claims); *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 2014 WL 2618158, at *28 (S.D. Tex. June 12, 2024) (same); *U.S. ex rel. Porter v. HCA Health Servs. of Okla., Inc.*, 2011 WL 4590791, at *8 (N.D. Tex. Sep. 30, 2011) (same). The logic supporting these decisions is commonsensical: to permit direct and reverse FCA claims based upon the same factual allegations would render the reverse false claims provision of the FCA superfluous by allowing every direct FCA claim to also give rise to a reverse FCA claim. *Accord U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 514 (E.D. Pa. 2010) ("Congress' purpose in enacting subsection [(a)(1)(G)] was to ensure that one who makes a false statement in order to avoid paying money owed to the [G]overnment would be equally liable under the Act as if he had submitted a false claim to receive money. Its purpose was not to provide a redundant basis to state a false statement claim under subsection [(a)(1)(B)].").

**B.    RELATOR'S THIRD CAUSE OF ACTION UNDER 31 U.S.C. § 3729(a)(1)(G) IMPERMISSIBLY RECASTS ITS FIRST AND SECOND CAUSES OF ACTION AND MUST BE DISMISSED.**

4.3    Relator fails to state a claim under 31 U.S.C. § 3729(a)(1)(G) against Imperative. Under well-settled authority, a relator may not simply recast its direct FCA claims as reverse FCA claims. *U.S. v. Cockerell Dermatopathology, P.A.*, 2021 WL 4894173, at *9 (N.D. Tex. Oct. 20, 2021). Courts that have addressed this issue have reached the same conclusion. *See, e.g.*, *id.*; *Ligai*, 2014 WL 4649885, at *13; *Ruscher*, 2014 WL 2618158, at *8; *Porter*, 2011 WL 4590791, at * 8.

4.4    For example, in *Porter*, the relator alleged that the defendants had concealed their failure to comply with the Clinical Laboratories Improvement Act ("CLIA") and therefore were

not entitled to receive interim reimbursements paid by the Government. 2011 WL 4590791, at *6-7. The relator further alleged that the defendants' false certification of their compliance with the CLIA "caused" the Government not to seek recovery of the improperly paid claims. *Id.* Based upon these allegations, the relator filed both direct and reverse FCA claims against the defendants. In dismissing the relator's reverse FCA claim, the *Porter* court noted as follows:

> In this case, [the relator] is essentially alleging that Defendants failed to refund the false claims the government paid. He is merely recasting his false statement claim under § 3729(a)(3). **This type of redundant false claim is not actionable under subsection (a)(7)**.

*Id.*, at *8 (emphasis added).

    4.5    Here, just as in *Porter*, Relator's First and Second Causes of Action are direct FCA claims under 31 U.S.C. §§ 3729(a)(1)(A) and (B) based solely upon the allegations that Imperative submitted a false claim for payment to the SBA by falsely representing it had 300 employees. *See* Doc. No. 18, ¶¶ 65-75. Relator's Third Cause of Action, under 31 U.S.C. § 3729(a)(1)(G), which is based on the *exact same set of facts*, is the inverse of Relator's First and Second Causes of Action. *Id.*, ¶ 79. In other words, just as in *Porter*, Relator is merely alleging Imperative failed to refund the allegedly false claims the Government paid. 2011 WL 4590791, at *8. This type of redundant FCA claim is simply not actionable and therefore must be dismissed.

C.    **RELATOR FAILS TO PLAUSIBLY ALLEGE THAT IMPERATIVE CONCEALED, AVOIDED, OR DECREASED ANY OBLIGATION TO PAY THE GOVERNMENT.**

    4.6    Relator's cause of action under 31 U.S.C. § 3729(a)(1)(G) should be dismissed for the additional reason that Relator fails to plausibly allege that Imperative concealed, avoided, or decreased any obligation to pay the Government. *See* 31 U.S.C. § 3729(a)(1)(G) (outlining elements of a reverse FCA claim). As set forth above, Relator alleges that Imperative, by falsely representing in its SBA Form 2483-SD that it had 300 employees, submitted a false claim to the

SBA. Doc. No. 18, ¶ 50. Relator also alleges that, because Imperative knew its representation was false, it had an obligation to pay back the SBA, and its failure to do so amounts to fraud. *Id.*, ¶¶ 80-81.

4.7   However, Relator's pleadings are devoid of any plausible facts to support an allegation that Imperative was ever aware of any alleged obligation to pay back the Government, let alone that it knowingly concealed, avoided, or decreased any alleged obligation. To this point, Relator does not allege the SBA ever sent Imperative any notice or correspondence advising that its receipt of the Second Draw loan proceeds was improper. Similarly, Relator does not allege the SBA ever notified Imperative that it needed to pay back the full amount of the Second Draw loan. Instead, Relator summarily alleges that Imperative "knew" of its obligation to pay back the SBA and "improperly avoided" that obligation. *Id.* These types of allegations are clearly insufficient under Rule 9(b) or Rule 12(b)(6) to state a reverse FCA claim under 31 U.S.C. § 3729(a)(1)(G). Therefore, Relator's cause of action under 31 U.S.C. § 3729(a)(1)(G) must be dismissed for this reason as well.

## V.   CONCLUSION

Accordingly, for the reasons set forth above, Imperative respectfully requests that the Court dismiss Relator's cause of action under 31 U.S.C. § 3729(a)(1)(G) and grant Imperative such other and further relief to which it may be justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, LLP

By: */s/ James L. Sowder*
    **James L. Sowder**
    State Bar No. 18863900
    jsowder@thompsoncoe.com
    **Jared Starr**
    State Bar No. 24122088
    jstarr@thompsoncoe.com

Plaza of the Americas
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201-2832
Telephone: (214) 871-8200
Facsimile: (214) 871-8209

**Attorneys for Defendant**
**Imperative Chemical Partners, Inc.**

## CERTIFICATE OF SERVICE

    I hereby certify that on June 27, 2025, a true and correct copy of the foregoing was served upon all known parties in accordance with the Federal Rules of Civil Procedure.

*/s/ Jared Starr*
**Jared Starr**